IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

Petitioner,

vs.                                                                                      Case No. 1:22-mc-20 JCH

**RICK Q. WILSON,**

Respondent.

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the United States' *Petition for Order Compelling Compliance with an Administrative Subpoena* (ECF No. 1), the United States' *Motion for Default Judgment* (ECF No. 7), and Respondent Rick Q. Wilson's *Motion to Dismiss Petition for Order Compelling Compliance with an Administrative Subpoena* (ECF No. 10). The Court will deny the United States' motion for default judgment and grant Respondent's motion to dismiss the petition under HIPAA and the Fourth Amendment because of the subpoena's overbreadth. Consequently, the Court will also dismiss the United States' Petition.

I.    INTRODUCTION

The Drug Enforcement Administration ("DEA") is investigating Respondent Rick Q. Wilson ("Dr. Wilson") for possible civil violations of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.* ("CSA"). Section 876 of the CSA provides: "In any investigation relating to his functions under this subchapter with respect to controlled substances, … the Attorney General may … require the production of any records (including books, papers, documents, and other tangible things which constitute or contain evidence) which the Attorney General finds relevant or material to the investigation." 21 U.S.C. § 876(a). Through delegations and re-delegations, Diversion Program Managers of the Drug Enforcement Administration ("DEA") have the authority to issue

administrative subpoenas. *See* 28 C.F.R. § 0.100(b) (delegating Attorney General functions under Comprehensive Drug Abuse Prevention and Control Act of 1970, and subsequent amendments thereto, to Administrator of DEA); 28 C.F.R. Pt. 0, Subpart R, App. § 4 (redelegating to DEA Diversion Program Managers authority to sign and issue subpoenas with respect to controlled substances).

The CSA provides an enforcement mechanism for the Attorney General when the subject of a subpoena refuses to comply through "any court of the United States within the jurisdiction of which the investigation is carried on or of which the subpenaed person is an inhabitant, or in which he carries on business or may be found, to compel compliance with the subpena." 21 U.S.C. § 876(c). The court may issue an order requiring the subpoenaed person to appear before the Attorney General to produce records, and any failure to follow the court's order may be punished as contempt. *Id.* Process in a compliance case "may be served in any judicial district in which such person may be found." *Id.*

## II.   FACTUAL BACKGROUND

### A.  The Administrative Subpoena

On April 27, 2021, Diversion Program Manager Heather McMurry issued DEA Administrative Subpoena MM-17-0128 (hereinafter "the Subpoena") to Rick Q. Wilson, PhD, seeking

> a list of all patients in the last five years and all controlled substance prescriptions written for each patient. In addition, please provide all documents relating to or referring to the following patients to include, but not limited to, patient files, billing statements, controlled substance prescriptions, communications, and any other documents which refer to or relate to the listed patients…

(Subpoena, ECF No. 1-1 at 1, 3 of 4.) The subpoena then listed the last name, first name, and date of birth of 41 patients. (*Id.* at ECF No. 1-1 at 3 of 4.) The Certificate of Subpoena, dated May 3,

2021, shows service by Diversion Investigator Evangelina Alvarez by handing a copy to the person to whom it was directed. (*Id.* at ECF No. 1-1 at 4 of 4.) The United States filed a petition in this Court on June 3, 2022, to enforce Dr. Wilson's compliance with the Subpoena (hereinafter "the Petition"). (Petition, ECF No. 1.)

### B. The Petition[1]

Dr. Wilson lives and works in California, but until recently, he saw patients in Albuquerque, New Mexico, twice a month through his corporation, Neuromental Health Services, Inc. (Petition 2, ECF No. 1.) The United States previously sought and obtained an order allowing it to obtain substance use disorder treatment records. (*Id.*) The United States' purpose in serving the Subpoena at issue here is to determine whether the prescriptions for Xanax and other controlled substances Dr. Wilson prescribed were medically appropriate or whether Dr. Wilson may have violated the CSA. (*Id.*)

In response, Dr. Wilson provided some documents, but of those, many of the documents were password protected. (*Id.* at 2-3.) He failed to produce a list of his patients in the last five years, controlled substance prescriptions written for each patient, and records for two of the requested patients. (*Id.* at 2.) While Dr. Wilson provided some records for 39 patients, he did not produce billing records, appointment notes for a handful of patients, or paperwork filled out by many of the patients. (*Id.* at 2-3.) After unsuccessfully attempting to obtain these documents and the password from Dr. Wilson's attorney, the United States filed this Petition, requesting an order directing Dr. Wilson to comply with the Subpoena. (*Id.* at 3-4.) According to the United States, the Subpoena is issued pursuant to lawful authority and purpose, is relevant to the DEA's

---

[1] The following facts listed in this section are those the Government asserts in its Petition and are included herein to provide context to the relevant motions. By listing these facts, the Court is not making any findings as to the accuracy of the factual recitation in the Petition.

investigation of whether Dr. Wilson violated the CSA, is reasonable, and is limited in time and to the number of patients "who died within a reasonably short period of time of seeing Dr. Wilson." (*Id.* at 4.)

### C. Service of Petition and Entry of Default

The United States filed a Summons in a Civil Action indicating Proof of Service of the Petition by leaving the summons at Dr. Wilson's usual place of business with April Rodriguez, Office Manager, on July 6, 2022, and mailing a copy to his last known address. (Summons, ECF No. 2 at 2 of 4.) The address was listed as Western Health Community Clinic, 1647 W. Anaheim St., Harbor City, CA. (*Id.* at 1.) In a Declaration of Diligence, the process server averred that he made the following prior attempts with these listed results: (1) June 29, 2022 (not in per employee and he left the summons with April Rodriguez, Office Manager); (2) June 30, 2022 (business closed); (3) July 1, 2022 (business closed); and (4) July 5, 2022 (business closed). (*Id.* at 3-4.) On August 2, 2022, the United States requested a Clerk's entry of default based on Dr. Wilson's failure to plead or otherwise defend. (Request, ECF No. 3.) The affidavit supporting the request erroneously listed June 6, 2022, as the date of service of the summons by leaving it with April Rodriguez, rather than July 6. (*See* Aff. ¶ 1, ECF No. 3-1.)

Counsel Brian G. Grayson entered his appearance on behalf of Dr. Wilson on August 8, 2022. (Notice of Appearance, ECF No. 4.) The next day, on August 9, 2022, the Clerk of the Court filed a Clerk's Entry of Default. (*See* Clerk's Entry of Default, ECF No. 5.) That same day, the United States filed a motion for default judgment (ECF No. 7).

### D. Respondent's Answer and Motion to Dismiss

Two days later, on August 11, 2022, Dr. Wilson, through Mr. Grayson, filed an *Answer to Petition for Order Compelling Compliance with an Administrative Subpoena* (ECF No. 8), in

which he asserted general denials to the facts and legal conclusions, noted he was filing a separate motion to dismiss the petition, and asserted numerous affirmative defenses. Subsequently, on August 16, 2022, Dr. Wilson filed his motion to dismiss petition (ECF No. 10) and a response to the Government's motion for default judgment (ECF No. 9). The parties have since completed briefing on the motions, which are now ready for decision.

### III. MOTION FOR DEFAULT JUDGMENT

The Federal Rules of Civil Procedure apply to proceedings to compel the production of documents through a subpoena issued by a United States agency under a federal statute. Fed. R. Civ. P. 81(a)(5). Under Federal Rule of Civil Procedure 55(a), the clerk may enter a default when a respondent or defendant has failed to plead or otherwise defend, and the plaintiff has shown that failure by affidavit or other evidence. Fed. R. Civ. P. 55(a). Once the clerk has entered default, the party must apply to the court for a default judgment. Fed. R. Civ. P. 55(b).

The court may set aside an entry of default for good cause. Fed. R. Civ. P. 55(c). The harsh sanction of default judgment is disfavored, as the preferred disposition of a case is resolution on its merits. *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970); *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (explaining that default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party, so that the diligent party's rights may be protected). "[T]he entry of a default judgment is committed to the sound discretion of the district court." *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016).

"[I]t is well established that the good cause required by Fed. R. Civ. P. 55(c) for setting aside entry of default poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under Fed. R. Civ. P. 60(b)." *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 775 n.6 (10th Cir. 1997). In deciding whether

to set aside an entry of default, a court may consider "whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *Pinson v. Equifax Credit Information, Inc.*, 316 F. App'x 744, at *750 (10th Cir. Mar. 10, 2009) (quoting *Dierschke v. O'Cheskey (In re Dierschke)*, 975 F.2d 181, 183 (5th Cir.1992) (quotation omitted)).

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). The plaintiff bears the burden of demonstrating that the court has personal jurisdiction over the parties and that there was valid service of process. *Claus v. Mize*, 317 F.3d 725, 727 (7th Cir. 2003).

### A. The United States properly served Dr. Wilson with process

In support of its motion for default judgment, the Government asserts that it served Dr. Wilson on July 6, 2022, yet Dr. Wilson did not respond, despite the Government alerting Dr. Wilson's attorney (and daughter) by email on August 3, 2022, that it requested a clerk's entry of default and would move for a default judgment. (*See* Gov.'s Mot. 1-2, ECF No. 7, and Gov.'s Ex. 2, ECF No. 7-2.) Although Mr. Grayson entered an appearance on August 8, 2022, the Government moved for default judgment because he did not file an answer or otherwise respond to the petition. (Gov.'s Mot. 2, ECF No. 7.)

In response, Dr. Wilson first argues that he was not properly served with process. According to the Government, whose burden it is to demonstrate proper service, it properly served Dr. Wilson in accordance with the laws of California, where service was attempted. The Government relies on § 415.20(b) of the California Code of Civil Procedure:

> If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, as specified in Section 416.60,

6

> 416.70, 416.80, or 416.90, a summons may be served by leaving a copy of the summons and complaint at the person's … usual place of business … in the presence of … a person apparently in charge of his or her office, place of business, … at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. Service of a summons in this manner is deemed complete on the 10th day after the mailing.

Cal. Civ. Pro. Code § 415.20(b).

Federal Rule of Civil Procedure 4(e)(1) permits service in a judicial district of the United States by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. Pr. 4(e)(1). The Court agrees with the United States that service of process was effective under California law. The process server described four prior attempts at personal service, and thus established reasonable diligence. (*See* Decl. of Diligence, ECF No. 2 at 3 of 4.) When those efforts failed, the server left a copy of the summons and complaint at one of Dr. Wilson's usual places of business in the presence of April Rodriguez, Dr. Wilson's Office Manager, and mailed a copy to Dr. Wilson's last known address. (*See* Proof of Service, ECF No. 2 at 2 of 4.) Although Respondent suggests that, because he is only at the Western Health Community Clinic two times a week, it is not the usual place of business, the Court concludes otherwise. The Court finds that the Government proved it served Dr. Wilson properly under California law.

### B. Good cause exists to set aside entry of default and deny motion for default judgment

Respondent nonetheless points out that under California law, when service is made under § 415.20(b), the service is "deemed complete on the 10th day after the mailing." Thus, service was deemed complete under the rule on Saturday, July 16, 2022. When "the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a

7

Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C). Consequently, service was complete for time computation purposes on Monday, July 18, 2022. Respondent then had 21 days thereafter to file an answer, which was on August 8, 2022. *See* Fed. R. Civ. P. 12(a)(1)(A)(i) ("A defendant must serve an answer … within 21 days after being served with the summons and complaint"). The United States, however, filed their motion for Clerk's Entry of Default on August 2, 2022, six days prior to the deadline for when Dr. Wilson had to answer.

The Court finds good cause to set aside the Entry of Default. Dr. Wilson explained that he first tendered a defense to his insurance company, and when that was denied, he worked to secure counsel in New Mexico, as his then-counsel was not licensed to practice in this state. (*See* Decl. of Rick Q. Wilson 2, ECF No. 9-1.) Mr. Grayson entered an appearance on August 8, 2022, the United States filed its motion for default judgment the next day, and Defendant filed an answer two days thereafter. This is not a case where the respondent is essentially an unresponsive party or that the adversary process has been halted. Accordingly, this short delay does not evidence willful default. *Cf. Pinson*, 316 F. App'x at 750 (finding defendant acted in "good faith by submitting its motion to set aside the default ... just six days after default was entered"); *Guttman v. Silverberg*, 167 F. App'x 1, 4 (10th Cir. 2005) (finding defendant did not act willfully in filing a motion to dismiss six days late "because we see no substantial advantage to [defendant] and no prejudice to [plaintiff] in connection with the short delay").

Moreover, respondent has asserted meritorious defenses under the Rule 55(c) standard. "[A]llegations are meritorious if they contain even a hint of a suggestion which, proven at trial, would constitute a complete defense." *Mohamad v. Rajoub*, 634 F.3d 604, 606 (D.C. Cir. 2011) (quoting *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C. Cir. 1980)).

8

Respondent has asserted legally cognizable defenses, such as that the subpoena is overly broad, so the Court finds the meritorious defense factor met.

Finally, factors to consider in determining whether the plaintiff established prejudice include whether the delay will cause "the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990). The United States argues that it will be prejudiced because there is a statute of limitations governing claims that can be brought under the CSA, and every day that passes, it potentially loses meritorious claims against Dr. Wilson. The United States, however, has not provided enough detail to ascertain any prejudice from the few days of delay between when Dr. Wilson's answer was due and when he filed it.

Consequently, the record supports setting aside the entry of default and considering Dr. Wilson's motion to dismiss and the Petition on the merits. The Court will therefore deny the United States' *Motion for Default Judgment* and will set aside the Clerk's *Entry of Default*.

## IV. MOTION TO DISMISS PETITION

Respondent asserts that enforcement of the Subpoena is barred by state law, the Health Insurance Portability and Accountability Act ("HIPAA"), the Fourth Amendment, and the Fifth Amendment.

### A. Enforcement is not barred by New Mexico Rule 11-504(B)

Respondent argues that, by complying with the Subpoena, he would violate his patient's privacy interests set forth in New Mexico Rule 11-504(B). Rule 11-504(B) provides: "A patient has a privilege to refuse to disclose, or to prevent any other person from disclosing, a confidential communication made for the purpose of diagnosis or treatment of the patient's physical, mental, or emotional condition, including drug addiction, between the patient and the patient's physician,

psychotherapist, or state or nationally licensed mental-health therapist." Rule 11-504(C) allows the patient's physician to claim the privilege on the patient's behalf. The rule excepts communications that have been ordered by the court as not privileged. N.M.R.A. 11-504(D)(2). According to the Government, the Supremacy Clause preempts any state law prohibitions or restrictions on the DEA's administrative subpoena authority.

The Supremacy Clause of the Constitution grants Congress the power to preempt state law. *See Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372 (2000) (citing U.S. Const., Art. VI, cl. 2). Where a state law conflicts with a federal statute, the state law is preempted. *Id.* Conflict preemption arises when it is impossible for a person to comply with both federal and state law, and where the state law stands as an obstacle to the accomplishment and execution of Congress's full purposes and objectives in enacting the federal law. *Id.* at 372-73. When determining whether the state law presents such an obstacle, a court looks at the federal statute as a whole, identifies the statute's purpose and intended effects, and considers whether the purpose cannot be otherwise accomplished if the state law remains in effect. *See id.* at 373.

Congress's main objectives in enacting the CSA were to conquer drug abuse, control the legitimate and illegitimate traffic in controlled substances, and prevent the diversion of drugs from legitimate to illicit channels. *Gonzales v. Raich*, 545 U.S. 1, 12 (2005). Under the CSA, the Attorney General has the power to issue administrative subpoenas to investigate suspected illicit drug activity, which in turn was delegated to the DEA. *United States Department of Justice v. Ricco Jonas*, 24 F.4th 718, (1st Cir. 2022). The CSA contains a section on the "Application of State law":

> No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, *unless there is a positive*

>*conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together*.

21 U.S.C. § 903 (emphasis added). Where a state law restricting the disclosure of patient records "prevents the DEA from obtaining the records it seeks", the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in passing the CSA, and the CSA preempts the state law. *United States v. Zadeh*, 820 F.3d 746, 751 (5th Cir. 2016). *See also Oregon Prescription Drug Monitoring Program v. U.S. Drug Enforcement Administration*, 860 F.3d 1228, 1236 (9th Cir. 2017) (concluding that CSA preempted Oregon statute that placed initial burden of requiring a court order to enforce the subpoena upon the DEA, because it stood as obstacle to full implementation of CSA by interfering with methods by which CSA was designed to reach its goal of strengthening law enforcement tools against traffic in illicit drugs). New Mexico Rule 11-504(B) creates a positive conflict with the CSA's administrative subpoena provisions, is thus preempted by the CSA, and does not bar disclosure of patient files, so long as the other requirements of law are met.

    **B. Enforcement of the Subpoena is barred by federal law unless it is more narrowly drawn**

Respondent argues that HIPAA prevents the Court from compelling production of the documents subject to the Subpoena until the Government shows the relevant HIPAA preconditions to disclosure have been satisfied. As Respondent acknowledges, HIPAA allows a covered entity to "use or disclose protected health information without the written authorization of the individual, as described in § 164.508, or the opportunity for the individual to agree or object as described in § 164.510, in" certain identified situations, including "for law enforcement purposes" in compliance with and as limited by the requirements of an administrative subpoena. 45 C.F.R. § 164.512(f). Disclosure is authorized in response to an administrative subpoena "provided that: (1)

11

The information sought is relevant and material to a legitimate law enforcement inquiry; (2) The request is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought; and (3) De-identified information could not reasonably be used." 45 C.F.R. § 164.512(f)(2)(C)(1)-(3).

The Government asserts that the preconditions are satisfied, because the information sought is relevant and material to the DEA's investigation of Dr. Wilson for possible violations of the CSA, specifically whether his prescriptions for Xanax and other controlled substances were medically appropriate. The Government contends that the request is specific and limited in scope because it names 41 patients and requests a list of the names of his patients in the last five years. As for the third requirement, the United States argues that it needs the names of patients to compare to the written prescriptions.

According to Respondent, the Government has failed to meet its burden on the second and third elements. Respondent contends that the Subpoena is not limited in scope because it seeks "all records" for each of the 41 patients, seeks information about a significant number of patients, and is not limited to patients that were prescribed Xanax. As for de-identified information, Dr. Wilson argues that de-identified information could be used to assess the medical propriety of Xanax for various John and Jane Doe patients.

A request may be over broad when it "is not limited to materials that may be relevant or lead to the production of admissible evidence nor is it restricted to the relevant time period." *Alexander v. F.B.I.*, 186 F.R.D. 21, 35 (D.D.C. 1998). The Government's request for "a list of all patients in the last five years and all controlled substance prescriptions written for each patient" is overly broad. The request requires disclosure of the names of patients, even if they had never been prescribed a controlled substance, and thus their identities would not be relevant to the

investigation. Instead, the list of patients should be limited to those patients to whom Dr. Wilson prescribed controlled substances in the past five years and may include the controlled substance prescriptions as well. As for the 41 patients identified by the Government, the United States seeks "all documents relating to or referring to" the patients. For the reasons discussed in the next section, the Court concludes that this request is too broad. Accordingly, HIPAA's preconditions have not been met and the Court will not compel production of the items listed in the Subpoena unless the requests are more limited as discussed herein.

### C. The Fourth Amendment bars enforcement of the Subpoena unless it is more narrowly drawn

Administrative subpoenas are not subject to the same probable cause requirements as a search warrant. *Becker v. Kroll*, 494 F.3d 904, 909, 916-17 (10th Cir. 2007) (upholding administrative subpoena of doctor's billing records for 47 randomly selected patients between 1995 and 1998 by a State Medicaid Fraud Control Unit investigating potential criminal up-coding). Notably, a subpoenaed party has a chance to challenge the subpoena before complying with it. *Id.* at 916-17. "The Fourth Amendment requires only that a subpoena be 'sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome.'" *Id.* at 916 (quoting *See v. City of Seattle*, 387 U.S. 541, 544 (1967)). In the "rare case" where the suspect has a legitimate, reasonable expectation of privacy in the records held by a third party, the government may need a warrant. *See Carpenter v. United States*, 138 S.Ct. 2206, 2221-22 (2018).

Dr. Wilson argues he has a reasonable expectation of privacy in the records that he generated to treat patients with the aid of patient reporting.[2] "The closely regulated industry

---

[2] The United States asserts that Dr. Wilson has not shown standing to asserts the privacy interests of third persons. A third party has standing to assert the rights of another where the party asserting the right has a close relationship with the person who possesses the right and there is a hindrance to the possessor's ability to protect his own interests.

doctrine recognizes that there is a diminished expectation of privacy for materials that are maintained by a business that is subject to pervasive regulation and inspection." *Ricco Jonas*, 24 F.4th at 734. Prescription drug records are kept in the closely regulated pharmaceutical industry, and the CSA and its implementing regulations require registered dispensers of controlled substances to maintain complete and accurate records and to keep them available for inspection by law enforcement officers without a warrant. *Id.* at 734-35 (citing applicable regulations). Accordingly, Dr. Wilson's expectation of privacy in prescription drug records is diminished. *Id.* The United States seeks medical records, however, that are broader than prescription drug records, and thus, the wider net of medical records implicate different privacy concerns. *See id.* at 735-36 (distinguishing between prescription drug records from medical records that contain sensitive medical history, such as mental illnesses, illicit drug use, and patient complaints and symptoms); *Big Ridge, Inc. v. Federal Mine Safety and Health Review Com'n*, 715 F.3d 631, 648 (7th Cir. 2013) ("Medical records can contain some of the most private information about a person. Any scheme that puts those records in the hands of strangers, even a government agency, is a serious matter….Courts recognize that private medical records warrant some privacy protection under the Fourth Amendment.").

Respondent argues that the administrative subpoena violates the Fourth Amendment's reasonable relevance test, because the language requiring disclosure of "any other documents which refer to or relate to" the listed patients is too broad in scope and is not limited to material germane to the investigation. He notes that the Government lists 41 patients who it asserted died

---

*Kowalski v. Tesmer*, 543 U.S. 125, 129-130 (2004). Dr. Wilson, however, has his own interests in medical records he created and that are kept in his possession to challenge an administrative subpoena. *See Zadeh*, 820 F.3d at 755-56 (explaining that person served with administrative subpoena may challenge its reasonableness under Fourth Amendment before complying with its demands). Dr. Wilson has sufficient standing for the Court to consider whether the Subpoena complies with HIPAA and the Fourth Amendment.

within a reasonably short period of time of seeing Dr. Wilson, but that the request is not limited to causes of death linked to the prescriptions and too broadly covers patients who, for example, may have died in a car accident or from cancer. He asserts that the Government has failed to set forth what a "reasonable time period" was from seeing Dr. Wilson to ensure a more reasonable connection to the investigative purpose underlying the Subpoena. To properly narrow the request, Respondent suggests that the Government's time window be explicitly stated and objectively reasonable given the toxicological effects of the medication the Government suspects Dr. Wilson prescribed.

The Government asserts that the purpose of the investigation is to determine whether Dr. Wilson appropriately prescribed the controlled substances, so it needs the same information about the patient as Dr. Wilson had when prescribing the controlled substances. The Court is not convinced, however, that the Fourth Amendment permits the disclosure of all such medical records in Dr. Wilson's possession, even those that are not at all related to the controlled substance prescriptions. The Subpoena should be more narrowly drawn to the investigative purpose concerning prescription drug use or abuse to address patient privacy concerns.

The Court finds the case of *United States v. Zadeh*, 820 F.3d 746 (5th Cir. 2016), upon which the Government relies, instructive. The Fifth Circuit upheld the issuance of a DEA administrative subpoena under the CSA, despite the privacy interests of patients whose records were being produced, where the court order narrowly confined "the scope of production to the ongoing government investigation" and placed "all produced medical records under seal with no access to others than the agents engaged" in the investigation. *Id.* at 758. Unlike in this case, however, the government had narrowed the scope of the subpoena to the following:

> (1) information sufficient to identify the patient, including the patient's full name, date of birth, and address; (2) limited intake information necessary to identify the

patient and the condition for which a controlled substance was prescribed; (3) information related to a diagnosis for which a controlled substance was prescribed; (4) the results of any laboratory work because of which a controlled substance was prescribed; and (5) information pertaining to the prescription of a controlled substance, including dates of prescriptions, types of prescriptions, and quantities prescribed.

*Id.* at 750. A comparison of the limitations in the subpoena at issue in *Zadeh* to the Subpoena here reveals why the request for all patient files of the 41 patients is too broad and not sufficiently limited in scope to the investigation of controlled substance prescriptions. For these reasons, the Court will grant Respondent's motion to dismiss the petition on Fourth Amendment grounds for failing to be sufficiently limited in scope to satisfy the reasonable relevance standard.

### D. The Court need not consider Respondent's Fifth Amendment arguments

Having concluded that the Subpoena is too broad under the Fourth Amendment and HIPAA, the Court need not consider Respondent's alternative argument under the Fifth Amendment.

**IT IS THEREFORE ORDERED** that:

1. The United States' *Motion for Default Judgment* (**ECF No. 7**) is **DENIED**.

2. The *Clerk's Entry of Default* (**ECF No. 5**) will be **SET ASIDE**.

3. Respondent's *Motion to Dismiss Petition for Order Compelling Compliance with an Administrative Subpoena* (**ECF No. 10**) is **GRANTED**.

4. The Petition is **DISMISSED without prejudice**.

_____
SENIOR UNITED STATES DISTRICT JUDGE