# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

Petitioner,

**vs.**                                         **Case No. 1:22-mc-20 JCH**

**RICK Q. WILSON,**

Respondent.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the United States' *Motion to Reconsider Order Dismissing Petition, Doc. 17, or in the Alternative to File an Amended Petition and to Enforce Subpoena* (ECF No. 18). The Court, having considered the motion, proposed amended petition, response, reply, evidence, and relevant law, will deny the request to reconsider but will grant the United States' alternative request to file the proposed amended petition. As for the United States' request to enforce the subpoena, the Court will grant the request.

## I.    LAW REGARDING ENFORCEMENT OF ADMINISTRATIVE SUBPOENAS UNDER CONTROLLED SUBSTANCES ACT

Section 876 of the CSA provides: "In any investigation relating to his functions under this subchapter with respect to controlled substances, … the Attorney General may … require the production of any records (including books, papers, documents, and other tangible things which constitute or contain evidence) which the Attorney General finds relevant or material to the investigation." 21 U.S.C. § 876(a). Through delegations and re-delegations, Diversion Program Managers of the Drug Enforcement Administration ("DEA") have the authority to issue administrative subpoenas. *See* 28 C.F.R. § 0.100(b) (delegating Attorney General functions under

Comprehensive Drug Abuse Prevention and Control Act of 1970, and subsequent amendments thereto, to Administrator of DEA); 28 C.F.R. Pt. 0, Subpart R, App. § 4 (redelegating to DEA Diversion Program Managers authority to sign and issue subpoenas with respect to controlled substances).

The CSA provides an enforcement mechanism for the Attorney General when the subject of a subpoena refuses to comply through "any court of the United States within the jurisdiction of which the investigation is carried on or of which the subpenaed person is an inhabitant, or in which he carries on business or may be found, to compel compliance with the subpena." 21 U.S.C. § 876(c). The court may issue an order requiring the subpoenaed person to appear before the Attorney General to produce records, and any failure to follow the court's order may be punished as contempt. *Id.* Process in a compliance case "may be served in any judicial district in which such person may be found." *Id.*

## II.     BACKGROUND

The Drug Enforcement Administration ("DEA") is investigating Respondent Rick Q. Wilson ("Dr. Wilson") for possible violations of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.* ("CSA"). On April 27, 2021, Diversion Program Manager Heather McMurry issued DEA Administrative Subpoena MM-17-0128 (hereinafter "the Subpoena") to Rick Q. Wilson, PhD, seeking

> a list of all patients in the last five years and all controlled substance prescriptions written for each patient. In addition, please provide all documents relating to or referring to the following patients to include, but not limited to, patient files, billing statements, controlled substance prescriptions, communications, and any other documents which refer to or relate to the listed patients…

(Subpoena, ECF No. 1-1 at 1, 3 of 4.) The subpoena then listed the last name, first name, and date of birth of 41 patients. (*Id.* at ECF No. 1-1 at 3 of 4.)

Dr. Wilson provided some records for 34 of the patients, but failed to produce billing and payment records, appointment notes for a handful of patients, and the paperwork filled out by most patients. (Scott Decl. ¶ 13, ECF No. 18-1.) Dr. Wilson produced other password-protected files that were locked. (*Id.*) He failed to produce a list of his patients in the last five years, controlled substance prescriptions written for each patient, or the password (*Id.*) After unsuccessfully attempting to obtain these documents and the password from Dr. Wilson's attorney, the United States filed a *Petition for Order Compelling Compliance with an Administrative Subpoena* (the "Petition"), requesting an order directing Dr. Wilson to comply with the Subpoena. (*See* Petition, ECF No. 1.)

On August 16, 2022, Dr. Wilson filed a motion to dismiss the Petition, asserting that enforcement of the Subpoena is barred by state law, the Health Insurance Portability and Accountability Act ("HIPAA"), the Fourth Amendment, and the Fifth Amendment. (*See* Mot. to Dismiss 3-11, ECF No. 10.) In a Memorandum Opinion and Order filed on November 21, 2022, this Court ruled that the Subpoena was overly broad in the following ways:

> The Government's request for "a list of all patients in the last five years and all controlled substance prescriptions written for each patient" is overly broad. The request requires disclosure of the names of patients, even if they had never been prescribed a controlled substance, and thus their identities would not be relevant to the investigation. Instead, the list of patients should be limited to those patients to whom Dr. Wilson prescribed controlled substances in the past five years and may include the controlled substance prescriptions as well….

(Mem. Op. and Order 12-13, ECF No. 17.) The Court thus determined that HIPAA's preconditions had not been met and would not "compel production of the items listed in the Subpoena *unless the requests are more limited*…." (*Id.* at 13 (emphasis added).) The Order also explained that the Court was not convinced "that the Fourth Amendment permits the disclosure of all such medical records in Dr. Wilson's possession, even those that are not at all related to the controlled substance prescriptions," but rather the "Subpoena should be more narrowly drawn to the investigative

purpose concerning prescription drug use or abuse to address patient privacy concerns." (*Id.* at 15.) The Court thus granted the "Respondent's motion to dismiss the petition on Fourth Amendment grounds for failing to be sufficiently limited in scope to satisfy the reasonable relevance standard." (*Id.* at 16.) It did not reach Respondent's alternative argument under the Fifth Amendment. (*Id.*) The dismissal was without prejudice. (*Id.*)

On January 10, 2023, the United States filed a motion to reconsider the rulings in the November 21, 2022, Memorandum Opinion and Order, or in the alternative, to grant the United States leave to file an amended petition and to enforce the subpoena. (Gov.'s Mot. 1, ECF No. 18.) In support of its motion to reconsider, the United States attached the Declaration of Diversion Investigator Shirley Scott (ECF No. 18-1). The Government also incorporated the contents of the Declaration in the proposed first amended petition it filed with its motion. (*See* Proposed Am. Pet. ¶ 9, ECF No. 18-4.)

In the Declaration, Scott averred that the DEA began investigating Dr. Wilson when it learned that, prior to December 2020, Dr. Wilson traveled to New Mexico only once or twice a month to see patients, and yet he was the number two prescriber of benzodiazepines in New Mexico, measured in Diazepam Milligram Equivalents. (Scott Decl. ¶¶ 15-16, ECF No. 18-1.) In December 2020, pursuant to a Settlement Agreement with the Board of Psychologist Examiners of the State of New Mexico, Dr. Wilson relinquished his prescription certificate, his controlled substance license through the New Mexico Board of Pharmacy, and DEA registration. (*Id.* ¶ 17.) The DEA seeks a list of patients for the last five years and all controlled substance prescriptions written to each patient to determine the percentage of patients to whom Dr. Wilson prescribed controlled substances, and it requests the patient names to cross-reference with prescriptions. (*Id.*

4

¶¶ 20, 22.) In Scott's experience, doctors who prescribe controlled substances to a large proportion of their patients are more likely to be prescribing improperly. (*Id.* ¶ 21.)

Scott also clarified in her Declaration that for the 41 patients for whom she seeks medical records, the DEA has information indicating that Dr. Wilson prescribed and/or dispensed controlled substances to each of them. (*Id.* ¶ 23.) Of those patients, 17 died of the toxic effect of multiple drugs including a benzodiazepine within one month of filling a prescription for that same benzodiazepine prescribed by Dr. Wilson, and one patient died of a heart condition with drug toxicity of multiple drugs a significant contributing factor within one month of filling a diazepam prescription prescribed by Dr. Wilson. (*Id.* ¶¶ 25-26.) Additionally, two of the 41 patients died of the toxic effect of drugs or complications due to acute and chronic substance use who had filled Dr. Wilson's controlled substance prescriptions within one month of their deaths, yet the toxicology report showed that the prescribed drugs were not in their systems. (*Id.* ¶ 27.) This latter information indicates that the patients were selling the controlled substance or trading it for other drugs. (*Id.* ¶ 29.) The DEA has information indicating that Dr. Wilson prescribed controlled substances without ensuring through urinalysis that the patients were taking the prescribed medication. (*Id.* ¶ 28.) According to the DEA, the remaining 21 patients came to its attention through other investigative efforts, and that it has information that Dr. Wilson's prescriptions for all of the 41 patients may have violated the CSA. (*See id.* ¶¶ 30-31.)

Scott asserts that the requested medical records are relevant to the DEA's investigation to determine the legitimacy of a patient's need for a controlled substance prescription. (*Id.* ¶ 33.) Moreover, the DEA seeks billing and receipt records for the 41 patients because, in her experience, "when doctors do not accept insurance and accept only cash or cash equivalents for payment, it is indicative that the doctors are prescribing the controlled substances for improper or illegal

purposes." (*Id.* ¶ 34.) Other communications relating to patients may reveal discussions bearing on the legitimacy of the patient's need for the prescribed drug. (*Id.* ¶ 35.)

### III.     MOTION TO RECONSIDER

The United States requests the Court to reconsider its decision dismissing the original Petition because the procedural posture of the motion was unclear. Although Dr. Wilson moved under Rule 12(b)(6) to dismiss the petition, (*see* Resp.'s Mot. 2-3, ECF No. 10), the Government contends that the Court erroneously reached the merits of the Petition, rather than applying the plausibility standard under Rule 12(b)(6).

"[T]he Federal Rules of Civil Procedure do not mention motions to reconsider, let alone set forth a specific procedure for filing them or a standard for analyzing them." *XTO Energy, Inc. v. ATD, LLC*, 189 F. Supp. 3d 1174, 1187 (D.N.M. 2016). Courts construe motions to reconsider in one of three ways: (1) a motion to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59(e); (2) a motion for relief from final judgment pursuant to Federal Rule of Civil Procedure 60(b); or (3) a motion for revision of an interlocutory order as authorized by Federal Rule of Civil Procedure 54(b). *See Price v. Philpot*, 420 F.3d 1158, 1167 & n.9 (10th Cir. 2005). Reconsidering an interlocutory order is discretionary, *see Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1223 n.2 (10th Cir. 2008). A motion for reconsideration is generally not an appropriate vehicle to advance arguments that could have been raised in prior briefing. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *see also Tillmon v. Douglas Cnty.*, 817 F. App'x 586, 590 (10th Cir. 2020) ("[A]rguments raised for the first time in a motion for reconsideration are not properly before the [district] court and generally need not be addressed" (quoting *United States v. Trestyn*, 646 F.3d 732, 742 (10th Cir. 2011))). Rather, grounds for considering a motion for reconsideration include when the court has misapprehended the facts, a

party's position, or the controlling law or where there is new evidence previously unavailable. *Servants of the Paraclete*, 204 F.3d at 1012.

This Court dismissed the prior petition without prejudice. (Mem. Op. and Order 16, ECF No. 17.) "A dismissal of the complaint is ordinarily a non-final, nonappealable order (since amendment would generally be available), while a dismissal of the entire action is ordinarily final." *Moya v. Schollenbarger*, 465 F.3d 444, 449 (10th Cir. 2006) (quoting *Mobley v. McCormick*, 40 F.3d 337, 339 (10th Cir. 1994)). Motions to enforce administrative subpoena are often dispositive when the subpoena issue constitutes the entire case before the court. *See Ross v. Pioneer*, No. 07-MC-18-TCK-FHM, 2007 WL 4150957, at *4 (N.D. Okla. Nov. 16, 2007). While the Court's prior order dismissed the Petition, it did so without prejudice, contemplating potential amendment to the Petition or to the Subpoena. The Court will thus evaluate the motion to reconsider as one to reconsider an interlocutory order.

In its Memorandum Opinion and Order, the Court applied the proper HIPAA and Fourth Amendment tests used to determine whether the information sought in an administrative subpoena meets the statutory and constitutional requirements. The Court considered the Government's Petition, assuming its allegations were true, and compared the allegations with the language of the Subpoena when analyzing the Subpoena's breadth and scope. The Court is not convinced it erred in its application of the law based on the record before it. But even if it prematurely reached the merits, for the reasons discussed in the next section, the Court concludes that the best procedural course at this stage is to permit leave to file the proposed Amended Petition, which contains additional detail and seeks both full and partial enforcement of the Subpoena. The Court will therefore deny the Government's request to reconsider its decision.

## IV.    REQUEST FOR LEAVE TO AMEND THE PETITION

The United States moves in the alternative for leave to amend its petition. Generally, a court should freely give leave to amend a complaint when justice so requires. Fed. R. Civ. P. 15(a)(2). Whether to allow amendment of the pleadings is within the discretion of the trial court. *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). The purpose of Rule 15 "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Id.* at 1204 (internal quotations omitted). Leave sought must be freely given in the absence of any justifiable reason for the denial of the motion, such as undue delay, bad faith, repeated failure to cure deficiencies by amendments, undue prejudice, or futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason, including that it would not survive a motion to dismiss or a motion for summary judgment. *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001); *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004).

The Government's proposed Amended Petition contains more detail about the investigation, how the documents are relevant, and incorporates the Scott Declaration. (*See* Proposed Am. Pet., ECF No. 18-4.) The Amended Petition seeks enforcement of the Subpoena as to all records requested therein or, if the Court finds the request too broad, those records the Court determines are reasonably relevant. (*Id.* at 5.) Respondent argues that the request to amend the petition should be denied because of futility. According to Respondent, enforcement of the Subpoena, as requested in the Amended Petition, likewise violates his constitutional and HIPAA rights. The Court will examine the Amended Petition and determine whether it would survive dismissal in light of HIPAA, the Fourth Amendment, and the Fifth Amendment.

### A.  HIPAA

HIPAA allows a covered entity to "use or disclose protected health information without the written authorization of the individual, as described in § 164.508, or the opportunity for the individual to agree or object as described in § 164.510, in" certain identified situations, including "for law enforcement purposes" in compliance with and as limited by the requirements of an administrative subpoena. 45 C.F.R. § 164.512(f). Disclosure is authorized in response to an administrative subpoena "provided that: (1) The information sought is relevant and material to a legitimate law enforcement inquiry; (2) The request is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought; and (3) De-identified information could not reasonably be used." 45 C.F.R. § 164.512(f)(2)(C)(1)-(3).

The Court will first examine the initial request in the Subpoena for "a list of all patients in the last five years and all controlled substance prescriptions written for each patient." (Subpoena, ECF No. 1-1 at 3.) This Court previously ruled that the request was overly broad because it requires disclosure of the names of patients, even if they had never been prescribed a controlled substance, and their identities would not be relevant to the investigation. (Mem. Op. and Order 12, ECF No. 17.) The Court instructed that the list of patients should be limited to those patients to whom Dr. Wilson prescribed controlled substances in the past five years and may include the controlled substance prescriptions as well. (*Id.* at 13.)

Turning then to the items the Court deemed too broad and not relevant, the Amended Petition gives additional information as to why the list of all patients is relevant to the investigation. As detailed in Scott's Declaration, which was incorporated into the Amended Petition, the list of patients in the last five years and all controlled substance prescriptions written for each patient are helpful to determine the percentage of patients to whom Dr. Wilson prescribed controlled substances. (*See* Proposed Am. Pet. ¶ 25, ECF No. 18-4; Scott Decl. ¶ 20, ECF No. 18-1.) In

Scott's experience as a Diversion Investigator, doctors who prescribe controlled substances to a large proportion of patients are more likely to be prescribing improperly. (Scott Decl. ¶ 21, ECF No. 18-1.) The identities of patients not prescribed controlled substances, however, are not needed to determine that calculation; rather, the percentage can be determined using the total number of Dr. Wilson's patients. The Court thus finds that the first line of the Subpoena would satisfy HIPAA if that request would be limited to a list of all patients in the last five years to whom Dr. Wilson prescribed controlled substances, all controlled substance prescriptions written for those patients, and the total number of Dr. Wilson's patients in the last five years. These requests are relevant and material to the DEA's legitimate law enforcement inquiry, are specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought, and de-identified information could not reasonably be used.

As for the next request in the Subpoena, the Government requests "all documents relating to or referring to the following patients to include, but not limited to, patient files, billing statements, controlled substance prescriptions, communications, and any other documents which refer to or relate to" 41 listed patients. (Subpoena, ECF No. 1-1 at 3.) In its prior Memorandum Opinion and Order, the Court concluded that the disclosure of "all documents relating to or referring to" the 41 patients was too broad and that the Subpoena "should be more narrowly drawn to the investigative purpose concerning prescription drug use or abuse to address patient privacy concerns." (Mem. Op. and Order 15, ECF No. 17.) In support of its ruling, the Court contrasted the Subpoena's broad request with a more limited request for patient files upheld by the Fifth Circuit in an action to enforce a subpoena in *United States v. Zadeh*, 820 F.3d 746 (5th Cir. 2016):

> (1) information sufficient to identify the patient, including the patient's full name, date of birth, and address; (2) limited intake information necessary to identify the patient and the condition for which a controlled substance was prescribed; (3) information related to a diagnosis for which a controlled substance was prescribed;

(4) the results of any laboratory work because of which a controlled substance was prescribed; and (5) information pertaining to the prescription of a controlled substance, including dates of prescriptions, types of prescriptions, and quantities prescribed.

(*Id.* at 15-16 (quoting *Zadeh*, 820 F.3d at 750).) The Court thus recognized that the Subpoena, if narrowed to cover only records relevant to the investigation of the propriety of Dr. Wilson's controlled substances prescriptions, would comply with HIPAA.

The Amended Petition seeks enforcement of the Subpoena in whole or as limited by the Court. As explained herein, the Court finds that enforcement of the Subpoena would not violate HIPAA if its scope was limited. Because the Amended Petition seeks full or partial enforcement, allowing amendment is not futile based on HIPAA requirements.

## B.  Fourth Amendment

Administrative subpoenas are not subject to the same probable cause requirements as a search warrant. *Becker v. Kroll*, 494 F.3d 904, 909, 916-17 (10th Cir. 2007). "The Fourth Amendment requires only that a subpoena be 'sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome.'" *Id.* at 916 (quoting *See v. City of Seattle*, 387 U.S. 541, 544 (1967)). The government only needs to make a prima-facie showing of relevance, at which point the party opposing enforcement "bears the 'heavy burden' of demonstrating that the government has not met this standard." *Zadeh*, 820 F.3d at 757. The government may satisfy its burden by an affidavit of an agent involved in the investigation. *Id.* at 757-58.

Here, Scott averred that for all 41 patients for which the DEA seeks medical records, the DEA has information indicating that Dr. Wilson's prescriptions may have violated the CSA. (Scott Decl. ¶ 31, ECF No. 18-1.) According to Scott, 18 of the patients died within one month of filling a controlled substance prescription with Dr. Wilson; two patients died from the toxic effect of

drugs or complications due to acute and chronic substance use within one month of filling a controlled substance prescription from Dr. Wilson, but without the substance in their system; and the other 21 patients came to the DEA's attention through other investigative efforts. (*Id.* ¶¶ 24-31.) The Amended Petition contains enough facts to show that the Subpoena, when limited to information leading to controlled substance prescriptions or concerning the manner in which Dr. Wilson determined whether and what controlled substance prescriptions to prescribe (such as laboratory work, including urinalysis), is sufficiently limited in scope, relevant in purpose, and specific in directive to comply with the Fourth Amendment. *Cf. Zadeh*, 820 F.3d at 757-58 (concluding that subpoena, "as limited by the July 2014 Joint Status Report", satisfied reasonable relevance standard where the investigation was lawful under CSA; the subpoena was limited in that it did not include all Dr. Zadeh's patients and included only patients whose prescriptions had already come to the DEA's attention through investigative efforts; the information was relevant and specific; and de-identified information could not reasonably be used). Allowing amendment would not be futile under the Fourth Amendment.

## C. Fifth Amendment

In support of his motion to dismiss, Dr. Wilson argued that production of the documents in response to an overly broad and vague subpoena would require testimonial admissions implicating his Fifth Amendment privilege against self-incrimination. He asserted that production reveals whether "certain records do or do not exist, the location of said documents, the authenticity of said documents, and other potential 'Kafka traps' that the Government could avail" itself of in a criminal proceeding. (Resp.'s Mot. to Dismiss 10, ECF No. 10.) The Government responded that Dr. Wilson had not shown how producing the documents amounts to testimony or could be incriminating; that Dr. Wilson waived the privilege by producing some, but not all the documents

without asserting the privilege; and that the records are not protected by the Fifth Amendment under the required records exception.

The Fifth Amendment provides that no person shall be compelled in a criminal case to be a witness against himself, but it "applies only when the accused is compelled to make a *testimonial* communication that is incriminating." *Baltimore City Dept. of Social Services v. Bouknight*, 493 U.S. 549, 554 (1990) (italics emphasis in original) (quoting *Fisher v. United States*, 425 U.S. 391, 408 (1976)). To be testimonial, a communication "must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Pennsylvania v. Muniz*, 496 U.S. 582, 589 (1990). That "incriminating evidence may be the byproduct of obedience to a regulatory requirement, such as … maintaining required records, … does not clothe such required conduct with the testimonial privilege." *United States v. Hubbell*, 530 U.S. 27, 35 (2000). While the act of complying with a subpoena "testifies to the existence, possession, or authenticity of the things produced," "a person may not claim the Amendment's protections based upon the incrimination that may result from the contents or nature of the thing demanded." *Baltimore City*, 493 U.S. at 555. The Supreme Court "recognized that the Fifth Amendment privilege may not be invoked to resist compliance with a regulatory regime constructed to effect the State's public purposes unrelated to the enforcement of its criminal laws." *Id.* at 556.

To support its position, the Government relies on the case of *In re Kenny*, in which the Second Circuit affirmed an order for civil contempt against a chiropractor licensed by the State of New Jersey who refused to produce and authenticate certain medical records demanded by a grand jury subpoena *duces tecum*. *In re Kenny*, 715 F.2d 51, 51-52 (2d Cir. 1983). The Second Circuit concluded that the subpoenaed medical records fell within the required records exception, because "documents maintained pursuant to a valid regulatory scheme possess certain 'public aspects'

sufficiently analogous to 'public documents' to warrant limited disclosure notwithstanding Fifth Amendment concerns." *Id.* at 53. "To satisfy this exception, the subpoenaed documents (1) must be maintained pursuant to an administrative scheme that is 'essentially regulatory;' (2) must be of a kind 'which the regulated party has customarily kept;' and (3) 'must have assumed 'public aspects' which render them at least analogous to public documents.'" *Id.* (quoting *Grosso v. United States*, 390 U.S. 62, 67–68 (1968)). The Second Circuit concluded that the exception applied because New Jersey's comprehensive statutory scheme to regulate medical professionals licensed to practice within the state advanced the important public purpose of ensuring that medical care is administered in the state by competent professionals, which is an essentially regulatory purpose. *Id.* at 52-53. Next, it was undisputed that the records were kept as a part of the chiropractor's regular medical practice. *Id.* at 53. The circuit concluded the third element was met where New Jersey's regulatory scheme amounted to a legislative judgment that limited disclosure of patient records was necessary to further the public interest through rigorous ongoing review of medical professionals. *Id.*

Regarding the applicability of *In re Kenny*, Dr. Wilson argues that, even if it has some applicability here, it does not compel the production of the documents because this case involves an overly broad subpoena. Dr. Wilson, however, does not dispute that New Mexico has a statutory scheme governing the practice of psychology or that he kept the records as part of his regular medical practice. Indeed, New Mexico enacted the Professional Psychologist Act, N.M. Stat. Ann. § 61-9-1 *et seq*., which among other things, sets forth prescribing practices to include keeping records of all prescriptions in patient records, N.M. Stat. Ann. § 61-9-17.2. To aid the State in carrying out its regulatory duties to ensure competent psychologists, New Mexico requires the retention of patient records by psychologists for five years. *See* N.M. A.D.C. § 16.22.2.8(G)(4).

The requested patient records thus are maintained to comply with New Mexico's regulatory regime and effect the State's public purposes unrelated to the enforcement of its criminal laws. Consequently, the medical records have assumed sufficient public aspects to render them subject to production under the records exception.

The Court finds Dr. Wilson's counterarguments unavailing. The Subpoena, as limited by the Court to documents related to the controlled substances prescriptions, is not overly broad or a fishing expedition. Unlike the case of *United States v. Hubbell*, 530 U.S. 27, 43-45 (2000), relied upon by Dr. Wilson, the Subpoena here is for documents the existence and location of which are known by the Government because of the State regulation that requires the retention of medical records. Dr. Wilson additionally argues that the production is testimonial and potentially incriminating because, if he is unable to produce documents that the Government asserts should be present, the Government could use that evidence against him. The Eighth Circuit considered and rejected a similar argument in the case of *In re Grand Jury Subpoena*, 21 F.3d 226, 227-230 (8th Cir. 1994) (reversing district court's order that quashed a subpoena directed to a sole proprietor for records required to be kept under federal and state law, including federally required odometer statements). The Eight Circuit reasoned that the required records exception applied, despite the self-incriminating and testimonial aspects of production because "(1) the public interest in obtaining the information necessary to the regulatory scheme outweighs the private interest in disclosure, and if a private individual were able to invoke the privilege the regulatory purpose of the scheme would be frustrated; (2) the individual, by engaging in the regulated activity, is deemed to have waived his privilege as to the production of those records which are required to be kept; and (3) the individual admits little of significance by the act of production because of the public aspects of the documents." *Id.* at 230.

For all the foregoing reasons, enforcement of the Subpoena, as limited by the Court, will not violate Dr. Wilson's Fifth Amendment right against self-incrimination. Amendment is therefore not futile.

### D.  Leave to amend

The Government has provided additional information in the Amended Petition concerning why it seeks, and the relevance of, certain documents, such as billing statements. It further requests both full or partial enforcement of the Subpoena. As explained *supra*, amendment would not be futile. For these reasons, and because leave to amend should be freely given, the Court will allow amendment of the petition.

### V.      ENFORCEMENT OF THE SUBPOENA

The United States requests the Court "to compel Respondent to fully comply with DEA Subpoena No. MM-17-0128 as written or as modified by the Court." (Gov.'s Mot. 15, ECF No. 18.) As for full compliance, for the reasons discussed herein, the Court finds that the language of the Subpoena is too broad when it requests all documents relating to or referring to the 41 patients. Instead, the information is only relevant to the United States' investigation if (i) the documents and information in the patient files, billing statements, and communications are related to the patient's treatment for a condition or diagnosis for which a controlled substance was prescribed; (ii) the records contain the results of any laboratory work (including urinalysis records) pertaining to the diagnosis or treatment because of which a controlled substance was prescribed or contain information concerning laboratory work (including urinalysis records) involved in monitoring the use or amounts of controlled substances by the patients; and/or (iii) the documents contain information pertaining to the prescription of a controlled substance.

The Court also finds that additional measures may be warranted to protect patient privacy. The United States indicates it is amenable to this Court placing produced records under seal with no access except to the United States Attorney's Office, the agents involved in the DEA investigation of Dr. Wilson, and the Government's retained expert in this matter. (*See* Gov.'s Mot. 14, ECF No. 18.) The Court is inclined to adopt such measures to address patient privacy concerns. *Cf. Zadeh*, 820 F.3d at 758 ("We are persuaded that these privacy concerns are best protected by a court order narrowly confining the scope of production to the ongoing government investigation and placing all produced medical records under seal with no access to others than the agents engaged here, absent further order of the district court.").

Consequently, the Court will order partial enforcement of the Subpoena, as limited herein, and with the additional measures of sealing the records.

**IT IS THEREFORE ORDERED** that the United States' *Motion to Reconsider Order Dismissing Petition, Doc. 17, or in the Alternative to File an Amended Petition and to Enforce Subpoena* (**ECF No. 18**) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. The United States' request to reconsider the Court's prior order is **DENIED**.

2. The United States' request to file the Amended Petition is **GRANTED**.

3. The Court will deem the Amended Petition (ECF No. 18-4) filed.

4. The United States' request to enforce the Subpoena is **GRANTED IN PART**. Respondent is ordered to comply with the Subpoena as follows:

    a. Provide a list of all patients in the last five years to whom Dr. Wilson prescribed controlled substances, produce all controlled substance prescriptions written for those patients, and provide the total number of Dr. Wilson's patients in the last five years.

  b. For the 41 listed patients in the Subpoena, provide all documents and information in the patient files, billing statements, and communications that are related to the patient's treatment for a condition or diagnosis for which a controlled substance was prescribed; all records that contain the results of any laboratory work (including urinalysis records) pertaining to the diagnosis or treatment because of which a controlled substance was prescribed and all records that contain information concerning laboratory work (including urinalysis records) involved in monitoring the use or amounts of controlled substances by the patients; and all documents containing information pertaining to the prescription of a controlled substance.

5. After receiving the documents, the United States must place the produced records under seal with no access except to the United States Attorney's Office, the agents involved in the DEA investigation of Dr. Wilson, and the Government's retained expert in this matter.

SENIOR UNITED STATES DISTRICT JUDGE